Hillsborough, }
  June, 1897. }

## SULLIVAN, *Receiver*, v. FERRYALL.

Where a building and loan association has agreed to pay the maturity value of its shares at a specified time and has loaned to a shareholder a sum equal to the maturity value of a portion of his shares, secured by a mortgage of real estate and evidenced by notes payable monthly which include principal, interest, and premium, the shareholder's grantee is entitled to redeem, in the event of the association's insolvency, upon payment of the outstanding notes, together with such costs and advances as the mortgagor agreed to pay.

BILL IN EQUITY, for a foreclosure and sale under a trust deed. Facts found by the court. The American Building, Loan & Investment Society, of which the plaintiff is receiver, was a foreign corporation and did business in this state. Its capital stock was divided into shares of $100 each, issued in monthly series. Shareholders were required to pay seventy-five cents per month upon each share subscribed for by them. If they continued these payments for seventy-eight months (six and a half years), the shares matured, and they were entitled to receive $100 for each share held. A shareholder was entitled to borrow $100 from the society for every share of stock he owned, by giving a satisfactory note therefor, secured by a first mortgage on real estate.

April 1, 1890, Mrs. Ferryall, the owner of twenty-two shares upon which five monthly payments had been made, borrowed of the society $2,000, and executed the trust deed in question, conditioned to pay the society $2,311.91, evidenced by seventy-three promissory notes of $31.67 each. Each note was made

up of two items, one of $16.67, the interest at ten per cent for one month on $2,000; and the other of $15, the amount due monthly on twenty shares of stock at seventy-five cents per share.

December 1, 1891, Mrs. Ferryall conveyed the real estate to the defendant, subject to the mortgage under consideration. In 1894 the society became insolvent, and the plaintiff was appointed receiver. At this time forty of the seventy-three notes had been paid, representing $1,266.80.

The defendant claims that he should be allowed to redeem upon payment of the other thirty-three notes and the bill for insurance. The plaintiff claims that the insolvency puts the matter upon an equitable basis, and that the part of the notes paid which represent the monthly dues should not be regarded as a payment on account of the shareholder's loan indebtedness, except to the extent of the twenty per cent dividends on the twenty-two shares which the society has declared.

All other facts necessary for a consideration of the questions raised will be found in the opinion.

*George B. French*, with whom were *Collins & Fletcher* (of Illinois), for the plaintiff.

*Charles W. Hoitt*, for the defendant.

PIKE, J. The instrument under which the plaintiff claims, although called a "trust deed," is in fact a mortgage. The relief sought is a foreclosure of the defendant's rights under it, if he does not pay the sum found to be due the plaintiff within a time to be limited in the decree. The controversy relates to the sum that is due the plaintiff by the terms of the deed.

The deed sets forth that the grantor is justly indebted to the American Building, Loan & Investment Society of Chicago in the sum of $2,311.91, "the same being the principal, interest, and premium of a loan from said society," made and accepted "under the provisions" of its by-laws (which are a part of the contract), and evidenced by seventy-three promissory notes of even date, signed by the grantor and payable to the society at its office in Chicago, one on or before the last Saturday of each and every month, beginning with a month named, until all are fully paid, together with all fines assessed for non-payment of any of them at maturity, as provided in the by-laws.

By the deed, the grantor covenanted and agreed to pay "the money, and interest and premiums at maturity" (that is, the notes), and the fines accruing on the notes after maturity; to keep the buildings insured against loss by fire for the benefit of the grantee and to its satisfaction; to pay all taxes, assessments,

rates, and other charges upon the property, and remove all adverse claims and incumbrances upon it; to repay all advances for insurance, taxes, rates, redemption from sales for taxes, or anything else made by the grantee to protect the security; to do whatever may be necessary to collect insurance in case of loss; and to do nothing or suffer nothing to be done whereby the property shall be diminished in value or the insurance shall be vitiated or affected.

It is further provided that if default shall be made in the payment of any of the notes or of the fines accruing for the non-payment thereof at maturity, or if there shall be waste, or non-payment of taxes or assessments, or if there shall be neglect or refusal to keep the property insured in suitable companies in a sufficient sum to protect the indebtedness or to keep the improvements upon the property in good order and repair, or if there shall be a breach of any covenant or agreement contained in the instrument, or a failure to duly observe and keep the by-laws of the society, then "the whole of the said principal sum, interest, premiums, fines, dues, and costs shall at once become due and payable at the option of the said society or its assigns, or the legal holder or holders of said notes," and upon the application of any of them it shall be lawful for the said grantee or its successors in trust, or any authorized officer or agent of said society, to enter and take possession of the property and collect the income thereof; and further, to file a bill for obtaining a decree "for the amount then unpaid on said notes and interest, premiums, fines, dues, and costs thereon," and for a sale of the property or any part thereof, and for the payment from the proceeds of the costs of the suit, the expenses of the sale, reasonable attorney's fees, the other expenses of the trust including advances for abstracts, insurance, taxes, and interest on such advances at the rate of eight per cent per annum, the interest on the unpaid notes up to the time of the sale whether due or not, and the payment of the "overplus," if any, to the grantor, his representatives or assigns, on reasonable request.

Finally, it provides that "when the said notes, and all fines, premiums, interest, and expenses accruing under this trust deed shall be fully paid, the said grantee, its successor or successors or legal representatives, shall reconvey all of said premises remaining unsold to said grantor, his heirs or assigns, upon receiving the reasonable charges therefor."

The foregoing contains the substance of all the provisions of the deed that are material to the present inquiry. The only item now claimed by the plaintiff as an "advance" is an item of $31.25 paid by the society for premium upon an insurance policy. This item the defendant admits. The plaintiff claims nothing as fines for the non-payment of notes at maturity, noth-

ing for costs other than those taxable in this suit, nothing for expenses accruing under the trust other than that of the insurance premium above mentioned, and nothing for the breach of any covenant or agreement other than the one relating to the payment of the loan. All these matters may therefore be dismissed without further consideration.

The grantor covenanted to pay "the money and interest and premiums at maturity." What did the parties intend to describe by the words "the money and interest and premiums"? Apparently the $2,311.91, the sum in which the grantor was justly indebted to the society, "being the principal, interest, and premium of a loan" made by the society to the grantor, and represented by seventy-three notes of $31.67 each. A consideration of the circumstances attending the making of the deed shows that this was the intention in fact.

At the date of the deed, April 1, 1890, the grantor, Mrs. Ferryall, held twenty-two shares in the American Building, Loan & Investment Society, upon which she had made five monthly payments, each of seventy-five cents upon each share, or $16.50 upon all the shares. In other words, she had then paid the society $82.50 upon the shares. In consideration of this relationship between the parties and of the agreements of the shareholder, the society by a certificate issued to her agreed to pay her or her heirs, executors, administrators, or assigns the sum of $100 for each of her shares at the end of six and a half years from the date of the certificate, in the manner and upon the conditions set forth in the certificate and the by-laws attached thereto. There is nothing in the certificate or the by-laws postponing the maturity of the shares, under any contingency, beyond the expiration of the six and a half years.

The shares differ in respect to the date of maturity from those commonly issued by building and loan associations. This date usually depends upon the profits earned and is consequently uncertain. It may come soon or late, according as the profits are great or small. This society did business in part, at least, upon a different plan. By its by-laws, it reserved "the right to mature any certificate at any time after one year and to issue a paid-up certificate of shares, payable at maturity of stock, with interest at the rate of six per cent per annum, or at maturity of stock in pledge, payable at time of maturity of loan." This was authority for the issuance of such stock as Mrs. Ferryall held. It bound all the shareholders in their mutual relations with each other. If during the six and a half years the holder of such stock paid the monthly installments thereon (seventy-five cents each share) as they became due, he would be entitled to $100 for each share at the end of the time, whether the profits warranted the payment of more or less than that sum. The

money received upon each share was expected to earn enough in interest and premiums to amount to $100, at least. The certificate provides that the shareholder "shall not have any claim to any interest in the affairs, assets, or funds of this society, nor the control of them, except as above specifically set forth, and assumes no further liability of any kind whatsoever except as hereinafter described."

Sixty-five cents of the seventy-five cents received by the society upon each share as the monthly installment was set apart as its loan fund. The other ten cents was reserved for expenses. The loan fund was to be loaned to shareholders at a uniform premium of ten per cent upon interest at the rate of ten per cent per annum, payable in monthly installments on the last Saturday of each month. Loans were to be secured by first mortgages of real estate and, "if deemed necessary by the board of directors," by the additional security of a pledge of a share of stock for each $100 of the loan. The business, if properly conducted, assured large profits.

At the date of the deed (April 1, 1890), the twenty-two shares held by Mrs. Ferryall would mature in seventy-three months,— five months of the six and a half years having already passed. She borrowed nominally $2,000, but received only $1,800,— the difference being the premium of ten per cent. It will be noted that twenty of her shares at their maturity (i. e., in seventy-three months) would pay the principal of the loan. In other words, if in the meantime she paid the monthly installments upon these shares and the interest upon the loan, the society would be owing her the same sum she would owe the society, and one debt would cancel the other. The interest on the loan for one month at the rate of ten per cent per annum was $16.67; the monthly installment upon twenty shares was $15. The two amounted to $31.67. The payment of this sum monthly for seventy-three months would both mature the shares and pay the interest on the loan.

The seventy-three notes mentioned in the deed were given for these monthly payments. Each included an installment upon the twenty shares of stock, a portion of the money which, together with the accumulation of profits from its use in making loans, would be returned to Mrs. Ferryall at the maturity of her stock by being applied to the payment of the principal of her indebtedness to the society. The principal of this indebtedness included the premium on the loan. Each note also included a month's interest upon the loan. In other words, each note covered principal, interest, and premium, and all of them together covered the whole of these several items. In view of these facts, the term "principal, interest, and premium," wherever used in the deed, becomes intelligible. The term is descrip-

tive of the items which make up the notes. The provision of the deed for a reconveyance of the property upon payment of the indebtedness, namely, " when the said notes and all fines, premiums, interest, and expenses accruing under this trust deed shall be fully paid," leaves no room for doubt upon this point. There being no fines and no expenses of the trust aside from the sum paid for insurance as previously stated, payment of the notes will pay the loan, the premiums upon it, and all interest that has accrued upon it according to the agreement of the parties ; and that, with the repayment of the sum paid for insurance, will entitle Mrs. Ferryall's grantee, the defendant, to a reconveyance of the property.

The plaintiff relies upon *Towle* v. *Society*, 61 Fed. Rep. 446, to sustain his position. The report of that case is general in its terms and is unsatisfactory. It is doubtful if a contract like the one under consideration was before the court. That case and the other cases cited by the plaintiff seem to refer to the kind of contracts commonly made by building and loan associations, which mature at an uncertain date depending upon the profits and in which associations the members are mutually interested.

It is not necessary to consider the question of the competency of the evidence offered at the trial term. If incompetent, it does not affect the result.

The sum due the plaintiff is the amount due upon the unpaid notes, and the sum paid for insurance, with interest. If this sum is paid, the defendant will be entitled to a reconveyance.

*Case discharged.*

PARSONS, J., did not sit : the others concurred.